RECEIVED

09 JAN 16 PM 4: 12

CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886
davidmuhs@mac.com

*Pro Se* Plaintiffs Individually and on
Behalf of Water Management Systems, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **WATER MANAGEMENT SYSTEMS LLC,** a Minnesota limited liability company; **DAVID MUHS** and **DIANN MUHS**, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>**MULTIQUIP INC**, a California corporation,<br><br>Defendant. | Case No. 09cv 94 PJS/JJG<br><br>**COMPLAINT**<br>**(Patent, Trademark, Copyright Infringement, and Related Claims)**<br><br>SCANNED<br>JAN 20 2009<br>U.S. DISTRICT COURT MPLS<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs Water Management Systems, LLC, David Muhs, and Diann Muhs (collectively,

"plaintiffs" or "WMS") allege as follows:

**Page 1 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

## Introduction

1.      This is an action at law and equity for patent, trademark, and copyright infringement, conversion, breach of contract, unfair competition, statutory unlawful trade practices, and related claims arising from the same course of conduct. Research and investigation is ongoing, and plaintiffs reserve the right to amend, supplement, or withdraw specific claims as the case progresses.

2.      Plaintiffs demand a trail by jury for all issues so triable.

## The Parties

3.      Water Management Systems, LLC, ("WMS") is a Minnesota limited liability company having a principal place of business at 16051 Tonkawood Court, Minnetonka, Minnesota, 55345.

4.      David Muhs and Diann Muhs ("the Muhs") are husband and wife and live at 16051 Tonkawood Court, Minnetonka, Minnesota, 55345. The Muhs are owners and employees of Water Management Systems, LLC.

5.      Plaintiff Multiquip is a California corporation with sales and service locations throughout the United States, include sales and service offices and personnel within the state of Minnesota. Multiquip maintains business locations within the state of Minnesota, including a location at 889 Hopewell Lane, Apple Valley MN 55124. Multiquip is engaged in the manufacturing and distribution of light- and medium-sized equipment lines for construction users throughout the United States, and worldwide. Its products include rammers, rollers, plate compactors and other compaction equipment; portable lighting; concrete and masonry pumping,

**Page 2 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

cutting, placing and finishing equipment; dewatering pumps; generators; welders and other related products. Jon Hunady is the Multiquip Region Manager for Region 4, which includes Minnesota.

### Jurisdiction and Venue

6.      The Court has subject matter / federal question jurisdiction over the claims in this case pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. The amount in controversy exceeds $75,000.00. Plaintiffs claims under state law are so closely related to plaintiffs' federal claims that they are part of the same case or controversy under Article III of the United States Constitution. Because the federal claims predominate, jurisdiction over the state claims is proper under the doctrine of pendant jurisdiction.

7.      Through sustained and ongoing contacts with and commercial activity in Minnesota, defendant Multiquip has purposely availed itself to the privilege of conducting business activities within Missouri, thereby invoking the benefits and protections of its laws, and/or have purposefully directed conduct at and within Minnesota that has had effect within Minnesota, and thereby is subject to the personal jurisdiction of this Court. Defendant is further subject to personal jurisdiction because it has committed material acts alleged herein within this jurisdiction.

8.      This Court is a proper venue pursuant to 29 U.S.C. §§ 1391 and 1400(b).

### Material Facts

**Patents and Trademarks at issue**

9.      WMS own the rights to a number of United States and foreign patents, several of which were the subject of a previous IP Lease Agreement, described below, between the parties.

**Page 3 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonka, MN 55345
(952) 933-0886

These include the following United States Patents: 6,390,768; 6,315,524; 6,585,492; 6,692,234; 7,011,505; 6,405,748; 7,311,335, and the following foreign/international patents: WO 0057056 A3; Australian Patent No. 776504; and WO 03078844 A2 (collectively, "pump-related patents").

10.    Plaintiffs also own other intellectual property, including the federally licensed trademark "INSTAPRIME", the unregistered trademark "HI-Flow", various brochures, marketing materials, user manuals and instructions, plans, drawings, models, molds, descriptions and methods of design, manufacture, and production, and other valuable trademark and copyright property related to the design, manufacturing, marketing, operation, and repair and maintenance of water pumps and related assemblies and parts. (Collectively, "pump-related trademarks and copyright"). The "INSTAPRIME" mark is registered on the Principal Register for the same class of goods as those with which Multiquip's counterfeit marks were used. The "HI-Flow" mark has been in widespread and continuous use by plaintiffs at all material times.

**Conduct at issue**

11.    Beginning in the fall of 2005, WMS and Multiquip began negotiating toward an agreement. In general, the parties desired a business arrangement under which WMS would license / allow the use of the plaintiffs' pump-related patents and pump-related trademarks and copyright (collectively "IP Portfolio") to Multiquip for a sum of money; Multiquip would pay royalties for sales of products produced , marketed, and sold using or implicating the transferred IP Portfolio; and David Muhs would provide consulting services to Multiquip in exchange for compensation in the form of a salary or at an agreed-upon hourly rate.

12.    During negotiations, the parties entered into an IP Lease Agreement ("ILA"). In general, the terms of the ILA were that:

**Page 4 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

(a)     Multiquip would pay WMS $10,000 per month as a Technology Lease of the IP Portfolio, described by Multiquip as a:

> "lease for all Technology Water Management Systems has for building Instaprime pumps. This includes all drawings, tooling, patterns for castings and knowhow. This does not include consuling [sic]."

(b)     the ILA specifically did not grant Multiquip a license to offer to sell, distribute, or sell any of the pumps or products covered by one or more claims of the applicable patents, or products bearing the trademarks INSTAPRIME or HI-Flow, or otherwise implicating the IP Portfolio. Any such sales could only be made under the ILA if a royalty agreement was reached, and royalty payments timely made.

(c)     lease payments made under the ILA were to be applied to the eventual total use fee paid by Multiquip for the IP Portfolio under the final agreement. This total use fee was an amount of money which plaintiffs required Multiquip to pay, in addition to per sale royalties, before it could begin making use of the IP Portfolio;

(d)     an initial payment of $10,000 was made as an earnest money payment to insure that during the pendency of negotiations, anticipated to last only a few months, WMS did not offer its IP Portfolio to others;

(e)     reasonable costs and expenses incurred by plaintiffs during the pendency of, and related to the ILA were to be reimbursed by Multiquip.

13.     Multiquip caused numerous intentional and unintentional delays in the negotiation process which unnecessarily extended the negotiation period far beyond that contemplated by the parties. Multiquip decided to make changes to the workable and proven designs provided by WMS, including changing to lower quality methods, processes, tolerances, and materials. As a

**Page 5 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonka, MN 55345
(952) 933-0886

result, it encountered difficulties with the manufacturing, marketing, quality, performance, and

longevity of its pumps. Because of these detrimental changes Multiquip voluntarily made to the

pumps, and because of a shortage of in-house machining capabilities, Multiquip revised and

lowered anticipated sales and market share projections. Multiquip then attempted to use these

problems of its own making as a bargaining chip to obtain more favorable terms from WMS and

the Muhs, and to unnecessarily and in bad faith extend the negotiation period, and to keep

WMS's valuable IP Portfolio off the market.

      14.     During the time period between January, 2006 and November, 2008 David Muhs

provided consulting and sales services to Multiquip. Pursuant to an agreement by the parties,

these services were to be compensated by Multiquip. Contrary to this agreement, Multiquip has

not compensated David Muhs for his time and/or services.

      15.     During the pendency of the ILA, Multiquip manufactured and sold at least 55

pumps which were subject to the ILA and IP Portfolio, and/or fall under one or more of the

claims in plaintiffs' patents, and/or which make use plaintiffs' trademarks, including but not

limited to the INSTAPRIME and HI-Flow trademark. WMS only agreed to sales during the

pendency of the ILA under the condition that a final agreement would be reached, and plaintiffs

would receive royalty payments for each sale. Contrary to this agreement, Multiquip has never

paid a royalty to plaintiffs for any of these sales.

      16.     In December, 2007 Multiquip made its last payment under the ILA, and thereby

terminated the ILA and IP Lease. As of January 1, 2008 any and all rights Multiquip had under

any agreement with plaintiffs, including the right to use any of the IP Portfolio, or maintain

possession of any of the products, objects, molds, or other things provided by plaintiffs, or to

**Page 6 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

possess any objects or things covered by the IP Portfolio were revoked, and fully ended.

17.     After January 1, 2008, and continuing to the present, Multiquip has make full and continuous use of the IP Portfolio. Its use has included: manufacturing, importing, marketing, and selling pumps and pump-related items which fall under one or more of the claims in plaintiffs' patents; continuing to use the trademarked term INSTAPRIME and/or HI-Flow in its marketing materials, on its pumps and parts, and on its internet and web-based information and marketing; and continuing to use copyrighted materials obtained from plaintiffs in is marketing, instructional, and other publications; continuing to use drawings, specifications, part patterns, and molds supplied by plaintiffs, or under the ILA.

18.     In addition to unauthorized use of copyrighted items provided to it, Multiquip has also made unauthorized modifications to plaintiffs' copyrighted materials, including drawings, specifications, part patterns, marketing and informational text, and other copyrighted materials provided to it by plaintiffs, and continues to use these derivative works of copyrighted material.

19.     During negotiations between the parties, Multiquip and plaintiffs entered into a confidentiality agreement which precluded Multiquip from disclosing proprietary and trade secret information disclosed by plaintiffs to third parties, and, in conjunction with the ILA, prevented Multiquip from continuing to make use of such proprietary and trade secret information after the termination of the ILA. Multiquip has provided proprietary and trade secrets subject to the confidentiality agreement to third parties, and has continued to use such information after termination of the ILA, to the material detriment of the plaintiffs.

20.     Plaintiffs provided Multiquip with pump parts, drawings, specifications, and part patterns during the negotiation process, and as part of the ILA. After negotiations were

**Page 7 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

terminated, plaintiffs requested return of these items.  Multiquip refused, and has not returned these items, but instead has converted them to its own use and benefit, and continues to use them. In addition, Multiquip has made detrimental modifications to some of these items, which has substantially diminished their value.

21.     Because of delays caused by Multiquip, its detrimental changes to the products disclosed by plaintiffs, its failure to negotiate in good faith, and its admitted intentional delaying tactics, plaintiffs were prevented from entering into licensing and royalty agreements with others during the time period between 2006 and 2008.  Losses caused by Multiquip's bad faith conduct were reasonably foreseeable at the time.

22.     Multiquip's pumps and pump-related products containing plaintiffs' trademarked INSTAPRIME and HI-Flow marks were and are of a poor quality, have been subject to a high rate of failure and return, high levels of customer dissatisfaction, and have substantially damaged the reputation and diminished the value of the INSTAPRIME and HI-Flow marks within the marketplace.

23.     Multiquip has produced and sold pumps and pump-related items which fall under one or more of the claims in plaintiff's patents, yet has failed to properly or adequately mark such products with the patent numbers.  Such conduct subjects plaintiffs' IP Portfolio to potential injury within the marketplace by (a) causing other manufactures to believe the technology is not subject to patent, and thereby encouraging infringement by others, and (b) providing a defense by others to claims that they have intentionally infringed plaintiffs patents.

### Claim for Enhanced Damages

24.     Multiquip's conduct described above evidenced willful and deliberate

**Page 8 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

infringement and violations of plaintiffs rights, justifying an award of interest, costs, and treble damages under 35 U.S.C. § 284.

**Plaintiffs' First Claim for Relief**

**Patent Infringement - 35 U.S.C. §271**

25.      Plaintiffs reallege paragraphs 1 through 24, and further allege:

26.      Without license or right to do so, Multiquip has manufactured, imported, assembled, offered for sale or lease, sold or leased, and/or caused or contributed to such conduct by others, one or more pumps and/or pump parts which are disclosed by one or more of the claims in plaintiffs' pump-related patents set forth above, a prohibited activity under 35 U.S.C. §271(a) and (b).

27.      Multiquip's infringement was done with full knowledge of plaintiffs' pump-related patents, and was therefore intentional.

28.      Plaintiffs have suffered economic damage and losses, and will continue to suffer economic damage and losses as a result of Multiquip's patent infringement in an amount to be determined at trial.

29.      Plaintiffs will suffer irreparable damage from Multiquip's conduct unless enjoined by this court from acts that infringe plaintiffs' patents.

30.      There are no possible non-infringing uses or applications of the infringing devices. To prevent future infringement and additional damages to plaintiffs, the appropriate remedy is an injunction pursuant to 35 U.S.C. §283 ordering the destruction or seizure of all of Multiquip's infringing devices.

**Plaintiffs' Second Claim for Relief**

**Page 9 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

**Trademark Infringement - 14 U.S.C. §1114**

31.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

32.     Without license or right to do so, Multiquip has manufactured, imported, assembled, offered for sale or lease, sold or leased pumps and/or pump-related items which infringe upon trademarks and trade dress owned by plaintiffs, including but not limited to unauthorized use of the Federally-registered trademark "INSTAPRIME" and "HI-Flow".

33.     Multiquip's conduct was likely to cause confusion, mistake, and/or to deceive consumers regarding the source of the pumps and/or pump-related items.

34.     Multiquip's infringement was done with full knowledge of plaintiffs' trademarks, and was therefore intentional.

35.     Plaintiffs have suffered economic damage and losses as a result of Multiquip's trademark and trade dress infringement in an amount to be proven at trial.

36.     Plaintiffs have been irreparably harmed in their business, and will continue to suffer irreparable harm unless Multiquip is restrained from further use of the plaintiffs' trademarks and trade dress, including the use of the "INSTAPRIME" and "HI-Flow" marks. Plaintiffs have no adequate remedy at law and, if Multiquip's activities are not enjoined, plaintiffs will continue to suffer irreparable harm and injury.

37.     There are no possible non-infringing uses or applications for the branding, advertising, and marketing materials used in connection with the defendants' infringing devices. To prevent future infringement and additional damages to plaintiffs, the appropriate remedy is an injunction ordering the destruction of all of Multiquip's markting materials, branding materials, electronic postings, and any other such materials that infringe plaintiffs' trademarks.

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

### Plaintiffs' Third Claim for Relief

### Trademark Counterfeiting - 15 U.S.C. §1114-1116

38.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

39.     Multiquip intentionally used counterfeits of the "INSTAPRIME", "HI-Flow" and other marks owned by plaintiffs in connection with the sale and/or offering for sale or distribution of its pumps and pump-related products and services.

40.     Multiquip's use of counterfeit copies of the "INSTAPRIME", "HI-Flow" and other marks owned by plaintiffs was and is likely to cause confusion, mistake, and/or to deceive consumers.

41.     Multiquip counterfeited plaintiffs' registered trademark, and other trademarks, and traded on the plaintiffs' reputation as the owners of the trademarks.

42.     At all materials times after January 1, 2008, Multiquip's use of plaintiffs' trademarks was unauthorized and without license.

43.     Plaintiffs have suffered, and will continue to suffer economic loss and damages as a result of Multiquip's counterfeit use of its trademarks in an amount to be proven at trial.

44.     Plaintiffs have been irreparably harmed in their business, and will continue to suffer irreparable harm unless defendant is restrained from further use and counterfeiting of the "INSTAPRIME" and other trademarks owned by plaintiffs.  Plaintiffs have no adequate remedy at law and, if Multiquip's activities are not enjoined, plaintiffs will continue to suffer irreparable harm and injury.

45.     There are no possible non-infringing uses or applications for the trademark materials now being counterfeited by Multiquip. To prevent future infringement and additional

**Page 11 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

damages plaintiffs, the appropriate remedy is an injunction ordering the destruction of all of

Multiquip's markting materials, branding materials, electronic postings, and any other such

materials that infringe plaintiffs' trademarks.

### Plaintiffs' Fourth Claim for Relief

### Copyright Infringement - 17 U.S.C. §501

46.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

47.     Without license or right to do so, Multiquip has copied and distributed, and

otherwise made use of plaintiffs' copyrighted materials, and derivative works based on plaintiffs'

copyrighted materials.

48.     Multiquip's infringement was done with full knowledge of plaintiffs' rights and

ownership, and was therefore intentional.

49.     Plaintiffs have suffered economic damage and losses as a result of Multiquip's

copyright violations in an amount to be proven at trial.

50.     Plaintiffs have been irreparably harmed in their business, and will continue to

suffer irreparable harm unless defendant is restrained from further use and distribution of

copyrighted material owned by plaintiffs.  Plaintiffs have no adequate remedy at law and, if

Multiquip's activities are not enjoined, plaintiffs will continue to suffer irreparable harm and

injury.

51.     There are no possible non-infringing uses or applications for the copyrighted

materials now being used and distributed by Multiquip. To prevent future infringement and

additional damages to plaintiffs, the appropriate remedy is an injunction ordering the destruction

of all of Multiquip's markting materials, branding materials, electronic postings, and any other

**Page 12 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonka, MN 55345
(952) 933-0886

such materials that infringe plaintiffs' copyright.

## Plaintiffs' Fifth Claim for Relief

### Unfair Competition - Common Law Misappropriation

52.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

53.     Plaintiffs and Multiquip are competitors in the national marketplace.

54.     Plaintiffs have invested a substantial amount of time, money, skill, and effort to create the "INSTAPRIME" trademark and other trademarks, to develop the copyrighted materials associated with their pumps and pump-related products, and to research and develop the trade secrets related to the design, manufacture, operation, and maintenance of their pumps and pump-related products.

55.     Multiquip, through the acts and conduct set forth above, unfairly misappropriated the commercial value of the trademarks, copyrighted material, and trade secrets created by the plaintiffs, all of which have substantial commercial value.

56.     Plaintiffs have suffered economic damage and losses as a result of Multiquip's misappropriation in an amount to be proven at trial.

57.     Plaintiffs have been irreparably harmed in their business, and will continue to suffer irreparable harm unless Multiquip is restrained from further misappropriation of plaintiffs' trademarks, copyrighted material, and trade secrets. Plaintiffs have no adequate remedy at law and, if Multiquip's activities are not enjoined, plaintiffs will continue to suffer irreparable harm and injury.

58.     There are no possible non-infringing uses or applications for the misappropriated materials now being used and distributed by Multiquip. To prevent future infringement and

**Page 13 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

additional damages to plaintiffs, the appropriate remedy is an injunction ordering the destruction

of all of Multiquip's markting materials, branding materials, electronic postings, and any other

such materials that infringe plaintiffs' trademark, copyright, and which contain misappropriated

trade secrets.

### Plaintiffs' Sixth Claim for Relief

### Unfair Competition - Misappropriation - 15 U.S.C. §1125

59.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

60.     Plaintiffs and Multiquip are competitors in the national marketplace.

61.     Plaintiffs have invested a substantial amount of time, money, skill, and effort to

create the "INSTAPRIME" and "HI-Flow" trademarks and other trademarks.

62.     Multiquip, through the acts and conduct set forth above, unfairly misappropriated

the commercial value of the trademarks created by the plaintiffs, and which have substantial

commercial value.

63.     Plaintiffs have suffered economic damage and losses as a result of Multiquip's

misappropriation in an amount to be proven at trial.

64.     Plaintiffs have been irreparably harmed in their business, and will continue to

suffer irreparable harm unless Multiquip is restrained from further misappropriation of plaintiffs'

trademarks.  Plaintiffs have no adequate remedy at law and, if Multiquip's activities are not

enjoined, plaintiffs will continue to suffer irreparable harm and injury.

65.     There are no possible non-infringing uses or applications for the copyrighted

materials now being used and distributed by Multiquip. To prevent future infringement and

additional damages to plaintiffs, the appropriate remedy is an injunction ordering the destruction

**Page 14 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

of all of Multiquip's markting materials, branding materials, electronic postings, and any other such materials that infringe plaintiffs' trademarks.

### Plaintiffs' Seventh Claim for Relief

### Conversion

66.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

67.     Beginning in the fall of 2005 and continuing until the termination of the ILA on January 1, 2008, plaintiffs provided Multiquip with pump parts, drawings, specifications, and part patterns as part of the negotiation and disclosure process, and as part of the ILA. After negotiations were terminated, plaintiffs requested return of these items. Multiquip refused, and has not returned these items, but instead has converted them to its own use and benefit, and continues to use them. In addition, Multiquip has made detrimental modifications to some of these items, which has substantially diminished their value.

68.     Plaintiffs have suffered economic damage and losses as a result of Multiquip's conversion in an amount to be proven at trial.

69.     Plaintiffs have been irreparably harmed in their business, and will continue to suffer irreparable harm unless Multiquip returns the converted items to plaintiffs for plaintiff's use. Plaintiffs have no adequate remedy at law and, if Multiquip's activities are not enjoined, plaintiffs will continue to suffer irreparable harm and injury.

70.     There are no possible non-infringing uses or applications for the converted materials now being used by Multiquip. To prevent future infringement and additional damages to plaintiffs, the appropriate remedy is an injunction ordering the return of the converted materials, and destruction of all copies or reproductions within Multiquip's possession, custody,

**Page 15 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

or control.

### Plaintiffs' Eighth Claim for Relief

### Breach of Contract

71.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

72.     A contract existed between Multiquip and plaintiffs, the terms of which included an agreement that (a) Multiquip would pay a 10% royalty to plaintiffs for each pump it made with either the INSTAPRIME and/or HI-Flow branding and/or which fell within the Leased IP Portfolio, (b) Multiquip would pay a 10% royalty to plaintiffs for all parts which it sold, (c) Multiquip would compensate plaintiffs for reasonable out of pocket costs associated with plaintiffs' performance of their obligations under the contract, and (d) Multiquip would pay a consulting fee for consulting services provided by David Muhs.

73.     Plaintiffs substantially performed each of their obligations under the contract.

74.     Multiquip breached the contract in that (a) it did not pay a reasonable royalty to plaintiffs for pumps it sold during the time of the ILA or thereafter, (b) it did not compensate plaintiffs for their reasonable out of pocket costs per the agreement, and (c) it did not pay a consulting fee to David Muhs for services he provided.

75.     Plaintiffs have suffered economic losses and damage as a result of Multiquip's breach in an amount to be determined at trial.

### Plaintiffs' Ninth Claim for Relief

### Minnesota Sales Representative Act, Minn.Stat. § 325E.37

76.     Plaintiffs reallege paragraphs 1 through 24, and further allege:

77.     A sales representative contract existed between Multiquip and plaintiff David

**Page 16 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

Muhs, the terms of which included (a) Multiquip would compensate plaintiff for reasonable out

of pocket costs associated with plaintiffs' performance of his obligations under the contract, and

(d) Multiquip would pay David Muhs for his services provided under the agreement, including

his efforts to sell Multiquip's products.

78.     David Muhs substantially performed each of his obligations under the contract.

79.     Multiquip breached the contract in that (a) it did not compensate David Muhs for

his reasonable out of pocket costs per the agreement, and (b) it did not pay David Muhs for

services he provided.

80.     Multiquip's actions and conduct with respect to plaintiff David Muhs was a

violation of the Minnesota Sales Representative Act.

81.     David Muhs suffered economic loss and damages as a result of Multiquip's

violation.

WHEREFORE, plaintiffs ask for judgment as follows:

1.     **On plaintiffs' First Claim for Relief for Patent Infringement for:**

a.     A preliminary injunction, or in the alternative a permanent injunction
       under 35 U.S.C. §283 restraining Multiquip from further infringing
       activity;

b.     A preliminary injunction, or in the alternative a permanent injunction
       under 35 U.S.C. §283 ordering Multiquip to destroy or disgorge to
       plaintiffs all infringing devices within their possession, custody, or
       control;

c.     Economic damages adequate to compensate for plaintiffs' lost profits

**Page 17 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

caused by Multiquip's infringement, or in the alternative a reasonable royalty;

d.   Prejudgment interest pursuant to 35 U.S.C. §284;

e.   Plaintiffs' costs incurred in pursuing this matter;

f.   Treble damages;

g.   Plaintiffs' attorney fees.

2.   **On plaintiffs' Second Claim for Relief for Trademark Infringement for:**

a.   A preliminary injunction, or in the alternative a permanent injunction under 35 U.S.C. §1116(a)  restraining Multiquip from further infringing activity;

b.   A preliminary injunction, or in the alternative a permanent injunction under 35 U.S.C. §1116(d) ordering Multiquip to destroy or disgorge to plaintiffs all infringing materials within their possession, custody, or control;

c.   Economic damages equal to Multiquip's profits gained as a result of their infringement of plaintiffs' trademarks;

d.   Economic damages sustained by plaintiffs as a result of Multiquip's infringement of plaintiffs' trademarks;

e.   Prejudgment interest;

f.   Plaintiffs' costs incurred in pursuing this matter pursuant to 15 U.S.C. §1117 (a);

g.   Three times the greater of: (1) Multiquip's profits gainst as a result of

**Page 18 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

infringing plaintiffs' trademarks or (2) economic damages sustained by plaintiffs;

h.   Plaintiffs' attorney fees.

3.   **On plaintiffs' Third Claim for Relief for Trademark Counterfeiting for:**

a.   A preliminary injunction, or in the alternative a permanent injunction under 35 U.S.C. §1116(a) restraining Multiquip from further infringing activity;

b.   A preliminary injunction, or in the alternative a permanent injunction under 35 U.S.C. §1116(d) ordering Multiquip to destroy or disgorge to plaintiffs all infringing materials within their possession, custody, or control;

c.   Prejudgment interest;

d.   Plaintiffs' costs incurred in pursuing this matter pursuant to 15 U.S.C. §1117 (a);

e.   Three times the greater of: (1) Multiquip's profits gainst as a result of infringing plaintiffs' trademarks or (2) economic damages sustained by plaintiffs or, IN THE ALTERNATIVE, statutory damages of not more than $1,000,000.00 per counterfeit mark per type of good sold, offered for sale, or distributed. 15 U.S.C. §1117;

f.   Plaintiffs' attorney fees.

4.   **On plaintiffs' Fourth Claim for Relief for Copyright Infringement for:**

a.   A preliminary injunction, or in the alternative a permanent injunction

**Page 19 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

restraining Multiquip from further use of plaintiffs' copyrighted materials;

b.   A preliminary injunction, or in the alternative a permanent injunction ordering Multiquip to destroy or disgorge to plaintiffs all copyrighted materials within their possession, custody, or control;

c.   Economic damages measured by the greater of: (1) Plaintiffs' actual damages and any additional profits gained by Multiquip as a result of its copyright infringement, or (2) statutory damages of $150,000 for each intentional violation of plaintiffs' copyright;

d.   Plaintiffs' costs incurred in pursuing this matter.

5.   **On plaintiffs' Fifth Claim for Relief for Common Law Misappropriation and plaintiffs' Sixth Claim for Relief for Statutory Misappropriation for:**

a.   A preliminary injunction, or in the alternative a permanent injunction under restraining Multiquip from further misappropriation of plaintiffs' trademarks, copyrighted material, and trade secrets;

b.   A preliminary injunction, or in the alternative a permanent injunction ordering Multiquip to destroy or disgorge to plaintiffs all infringing materials within their possession, custody, or control;

c.   Economic damages measured by the greater of: (1) Multiquip's profits gained as a result of its unfair competition / misappropriation, or (2) economic damages sustained by plaintiffs as a result of Multiquips' unfair competition / misappropriation;

d.   Plaintiffs' costs incurred in pursuing this matter;

**Page 20 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

    e.    Punitive damages appropriate to punish Multiquip's intentional and wanton misconduct.

6.    **On plaintiffs' Seventh Claim for Relief for Conversion for:**

    a.    Economic value of the items converted by Multiquip;

    b.    Economic losses suffered by plaintiffs as a result of the conversion;

    c.    Plaintiffs' costs incurred in pursuing this matter;

    d.    Punitive damages appropriate to punish Multiquip's intentional and wanton misconduct.

7.    **On plaintiffs' Eighth Claim for Relief for Breach of Contract for:**

    a.    Economic damages sustained by plaintiffs as a result of Multiquip's breach of contract;

    b.    Plaintiffs' costs incurred in pursuing this matter.

8.    **On plaintiffs' Ninth Claim for Relief for Violation of the Minnesota Sales Representative Act for:**

    a.    Economic damages sustained by plaintiff David Muhs as a result of Multiquip's violation of the Minnesota Sales Representative Act, including salary, hourly pay, and / or commissions due;

    b.    Plaintiff's attorney fees incurred in pursuit of this claim;

/ / / / /

/ / / / /

/ / / / /

/ / / / /

**Page 21 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**

David Muhs
Diann Muhs
16051 Tonkawood Court
Minnetonk, MN 55345
(952) 933-0886

c.      Plaintiffs' costs incurred in pursuing this matter.

DATED:  January 16, 2009.

Respectfully submitted:

_____ 1-16-09

Diann Muhs individually and on
Behalf of Water Management Services, LLC

_____

David Muhs individually and on
Behalf of Water Management Services, LLC

**Page 22 - COMPLAINT - Patent, Trademark, Copyright Infringement, and Related Claims**